UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
DEC 2 2 2005

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| IN RE NORTHWESTERN CORPORATION DERIVATIVE LITIGATION | CIV 03-4091<br><br>MEMORANDUM OPINION AND ORDER |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

The Court previously approved the Stipulation of Settlement filed in this action, Doc. 67, with the exception of the award of attorney's fees for Derivative Counsel, which the Court retained jurisdiction to consider. Derivative Counsel were ordered to submit time records detailing the work performed and the amount of time spent working on this case, which would not be the sole factor for awarding attorney's fees, but would be one of the factors the Court would consider in determining whether the agreed upon fee is reasonable. *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995) (setting forth several factors that may be considered in valuing services of derivative counsel, including "the time fairly required to be spent on the case; the skill required and employed on the case with reference to the intricacy, novelty and complexity of issues; the difficulty encountered in unearthing the facts ....").

The Tenth Circuit Court of Appeals recognized that "[t]he award of attorney's fees to plaintiffs in class action and derivative suits is based upon the common benefit doctrine, an exception to the American Rule that prevailing litigants must pay their own attorneys' fees." *Rosenbaum*, 64 F.3d at 1444. "The valuation of the legal services rendered in prosecuting a derivative claim is a matter that lies within the trial court's discretion." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1841 (2d ed.1986). "In determining what amount is a reasonable award, the court is faced with competing considerations. Certainly, allowances should be liberal enough to compensate lawyers adequately so that use of the derivative action to police corporate management will be encouraged. But awards should not be so generous as to foster strike suits." *Id.* Several factors may be considered in valuing the services of derivative counsel:

> "[T]he amount recovered for the corporation; the time fairly required to be spent on the case; the skill required and employed on the case with reference to the intricacy, novelty and complexity of issues; the difficulty encountered in unearthing the facts and the skill and resourcefulness of opposing counsel; the prevailing rate of compensation for those with the skill, experience and standing of the attorneys, accountants or others involved; the contingent nature of the fees, with the accompanying risk of wasting hours of work, overhead and expenses ...; and the benefits accruing to the public from suits such as this."

*Id.* (quoting *Angoff v. Goldfine*, 270 F.2d 185, 189 (1st 1959)). The Supreme Court has recognized that the absence of a monetary recovery will not prevent an award of attorney's fees:

> [I]n shareholders' derivative actions, ... the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor.

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 394 (1970).

The first factor to be considered is the amount recovered for the corporation. In this derivative action, there was no monetary amount recovered for the corporation. The benefits provided by the Stipulation of Settlement relate to several corporate governance provisions that NorthWestern will adopt and follow, as set forth in paragraph 2.3 of the Stipulation of Settlement.

The second factor is the time fairly required to be spent on the case. Three law firms participated as counsel for plaintiffs in this derivative action. Pursuant to the Court's request, Derivative Counsel have provided the Court with an estimate of the number of hours spent on this case by these law firms. The Robbins Umeda & Fink, LLP firm spent 299 hours on this case. The total lodestar amount for attorneys, paralegal and professional staff based on the Robbins firm's then-current rates is $107,862.50. (Affidavit of Jeffrey Fink, Doc. 72.) The Court notes that the paralegal, law clerk and document clerk rates allocated by the Robbins firm are significantly higher than this Court has historically allowed in lodestar fee cases. The Lasky & Rifkind, Ltd. firm spent 46.75 hours on this case. (Affidavit of Norman Rifkind, Doc. 73.) The total lodestar amount for the two attorneys from the Lasky firm who worked on this case is $25,656.25. The DeMersseman,

Jensen, Christianson, Stanton & Huffman, LLP firm spent 159.25 hours on this case. (Affidavit of Richard E. Huffman, Doc. 74.) The total lodestar amount for the two attorneys in the DeMersseman firm who worked on this case is $35,831.25. Thus, the total number of hours spent by all Derivative Counsel was 505 hours and the total lodestar amount is $169,350. In addition, the total expenses incurred by all Derivative Counsel is $10,217.41. (Doc. 57, ¶ 28). Thus, the multiplier requested by Derivative Counsel is 4.5.

The third factor is the skill required and employed on the case. The Court recognizes that counsel pursuing derivative litigation must be well-versed in the securities laws, and it appears that at least lead counsel were so, although this litigation was settled at such an early stage that the possible intricate, novel and complex issues that may have been presented in this action were not developed. While the consolidated complaint, Doc. 25, is well-drafted, the Court notes that the brief submitted by Derivative Counsel in support of the motion for final approval of the settlement (Doc. 51), appears to be a partially modified brief that could be filed in many shareholder derivative litigation actions involving a settlement.

As to the fourth factor, unearthing facts relating to the issues involved in this litigation was likely difficult as counsel explained that they examined thousands of documents in investigating this litigation. In addition, there is no doubt that Defendants' counsel were skilled and resourceful.

As to the fifth factor, Derivative Counsel did not present evidence as to the prevailing rate for similarly skilled attorneys. Pursuant to the sixth factor, the Court is to consider whether the case was taken on a contingency basis. This case was taken on a contingent basis by Derivative Counsel, and the Court recognizes that counsel undertook a risk of spending many hours and incurring expenses in this litigation without any assurance they would be paid for that time.

The final factor is the public interest. The public benefits from suits such as this by the enforcement of compliance with the securities laws.

3

In summary, the case was prosecuted quickly and vigorously by all Derivative Plaintiffs' Counsel. The work required a high degree of legal sophistication on the part of claimants. It is difficult to know how efficient counsel were with their time without an itemized statement of services rendered for each time entry. It does generally appear that counsel were diligent in their efforts and it appears that no effort was wasted. No money damages were recovered, but corporate government concessions were made as a result of the efforts of Derivative Counsel. The concessions do not appear to be particularly remarkable nor should they have been very difficult to obtain. In some instances they only amounted to complying with the law. Finally, no one can ignore the fact that going into this litigation, counsel could have received no fees. In considering the generous rates charged in their normal per hour charges, all counsel are well compensated by a consideration of the factors discussed above and a fee and expense award of $405,000, that being a multiplier of approximately 2.2. This is no condemnation of the services of counsel. Instead, this Court considers it a commendation for good work done on a contingency with modest but prompt success.

The Court recognizes that the requested fee of $810,000 for Derivative Counsel was negotiated and agreed to during the global settlement of the securities litigation and this case. Nevertheless, considering the above factors, the Court finds that a reasonable attorney's fee in this case is $405,000.00, which includes Derivative Counsel's expenses in this litigation. Accordingly,

IT IS ORDERED:

1. That the request for attorney's fees in the Motion for Approval of Settlement, Doc. 50, is granted in part and denied in part, with a total of $405,000 being awarded for attorney's fees and expenses in this action.

2. That the attorney's fees and expenses awarded in paragraph 1 above shall be allocated among Derivative Plaintiffs' counsel in a manner which, in their good-faith judgment, reflects each such counsel's contribution to the institution, prosecution and resolution of the litigation.

3. That the attorney's fees and expenses awarded in paragraph 1 above shall be paid to Derivative Counsel, subject to the terms, conditions and obligations of the Stipulation of Settlement and in particular paragraph 6.3 thereof, which terms, conditions and obligations are incorporated herein.

Dated this 21st day of December, 2005

BY THE COURT:

_____
Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _Shelly Margulies_
(SEAL)        DEPUTY

5